United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUSALITO YACHT HARBOR,<br>Plaintiff,<br>v.<br>S/V DREAMER,<br>Defendant. | Case No. 4:26-cv-01921-KAW<br>**ORDER GRANTING MOTION FOR INTERLOCUTORY VESSEL SALE AND AUTHORIZATION TO CREDIT BID**<br>Re: Dkt. No. 30 |

Plaintiff Sausalito Yacht Harbor brings this in rem action to satisfy maritime liens related to Defendant S/V Dreamer (the "Vessel"). Default was entered against the Vessel on July 17, 2026. (Dkt. No. 28.) To date, no formal claims or answers have been filed in this action.

On July 21, 2026, Plaintiff filed this Motion for Interlocutory Vessel Sale and Authorization to Credit Bid. (Mot., Dkt. No. 31.) Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).

On September 10, 2026, the Court held a hearing at which no potential claimants appeared to challenge the pending motion. For the reasons set forth below, the Court GRANTS the motion for interlocutory vessel sale and authorization to credit bid.

## I. BACKGROUND

### A. Factual Background

Plaintiff Sausalito Yacht Harbor operates a 600 slip marina known as the "Sausalito Yacht Harbor," located at 501 Humbolt Avenue, Sausalito, California 94965. (Compl. ¶ 3.) The Vessel is a 1974 Choey Lee OS-40 sailing vessel of approximately 39.5 feet in length and 11 feet in beam. (Compl. ¶ 4.) The Vessel is documented with the U.S. Coast Guard under Official No. 1147383, and is owned by J. Loyal Tarbet. (Compl. ¶¶ 4, 6.)

On November 18, 2014, Tarbet executed a Maritime Contract for Private Wharfage (the "Wharfage Contract"), in which Plaintiff agreed to provide wharfage and other services for the benefit of the Vessel in exchange for monthly fees. (Compl. ¶ 6 & Ex A (Wharfage Contract).) Under the Wharfage Contract, fees are due no later than the first day of each month and, if not paid by the 15th day, are subject to a late charge of 10% of the sum due. (Wharfage Contract ¶ 5.) On July 19, 2022, Tarbet executed an Addendum to License Agreement – Living Aboard (the "Addendum"), whereby Plaintiff allowed Tarbet to live on the Vessel while berthed at Plaintiff's marina. (Compl. ¶ 7 & Ex. B (Addendum).) The Wharfage Contract provides that either party may freely terminate it upon 30 days' advance written notice, and that "the party terminating the Agreement *is not required to specify any cause for the termination*." (Compl. ¶ 8 (citing Wharfage Contract ¶ 7 (emphasis in original)).)

Plaintiff alleges that the Vessel's account fell into arrears, and, on June 3, 2025, Plaintiff's counsel sent Tarbet a letter notifying him of Plaintiff's election to terminate the tenancy effective July 15, 2025. (Compl. ¶¶ 12-13.) The letter further informed Tarbet that if the Vessel did not vacate the marina by the termination date, the Vessel would be subject to arrest, and "wharfage fees would accrue at marina's current transient rate of $2.00 per foot of vessel length per day." (Compl. ¶ 13.)

The Vessel was not removed from Plaintiff's marina by the termination date, and neither Tarbet nor anyone else has paid all or any part of the arrearages accruing pursuant to the Wharfage Contract. (Compl. ¶ 14.) Plaintiff, however, "has provided wharfage services in a workmanlike manner that is consistent with the requirements of the Wharfage Contract and the prevailing industry standards, and it has otherwise fully satisfied all contractual obligations required of it as a maritime services provider." (Compl. ¶ 15.)

**B. Procedural Background**

On March 5, 2026, Plaintiff initiated this action, seeking arrest and interlocutory sale of the Vessel. (*See* Compl.) On that same date, Plaintiff filed an ex parte application for issuance of warrant in rem, an ex parte application for appointment of substitute custodian and for authorization for movement of defendant vessel, and an ex parte application for issuance of

United States District Court
Northern District of California

warrant in rem. (Dkt. Nos. 3-5.) The Court granted the applications on March 16, 2026. (Dkt. Nos. 12-14.) On April 15, 2026, summons was issued. (Dkt. No. 18.) On April 27, 2026, the vessel owner, J. Loyal Tarbet, was served with the verified complaint, the summons, the order authorizing the arrest of the vessel, the warrant for action in rem, and the initial case management scheduling order. (Dkt. No. 19.) Tarbet was also served via U.S. Mail to two different addresses. (Dkt. No. 20.) On April 29, 2026, Tarbet was personally served by the U.S. Marshal Service, and a response was due by May 20, 2026. (Dkt. No. 27.) On May 6, 2026, Plaintiff also published a notice of the arrest in the San Francisco Daily Journal, which confirmed that the U.S. Marshal arrested the Vessel on April 29, 2026. (Dkt. No. 22.)

On June 30, 2026, Plaintiff filed a motion for entry of default against the Vessel. (Dkt. No. 28.) The Clerk entered default on July 17, 2026. (Dkt. No. 28.)

On July 21, 2026, Plaintiff filed the instant motion for interlocutory vessel sale and authorization to credit bid. (Mot., Dkt. No. 30.) The motion was served on Tarbet and Alan Robin, the holder of the preferred ship mortgage, by Certified U.S. Mail. (Dkt. No. 30-4.) To date, no opposition has been filed and no other party has appeared.

## II. LEGAL STANDARD

The Supplemental Rules for Admiralty of Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (the "Supplemental Rules") govern maritime actions in rem. Fed. R. Civ. P. Supp. R. A(1)(A)(ii). Supplemental Rule E(9)(a)(i) authorizes courts to order a vessel sold if one of three criteria are met:

> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or disproportionate; or
> (C) there is an unreasonable delay in securing release of the property.

"A party moving for interlocutory sale of a vessel need only show that one of these three criteria is met." *Sausalito Yacht Harbor v. S/V SOGGY*, No. 19-CV-01268-TSH, 2019 WL 5091171, at *2 (N.D. Cal. July 5, 2019) ("*S/V SOGGY*"), *report and recommendation adopted as modified sub nom. Harbor v. S/V Soggy*, No. 19-CV-01268-JSW, 2019 WL 5091161 (N.D. Cal. Aug. 13, 2019) (citation omitted).

Courts should not grant a motion for interlocutory sale unless the defendant has had sufficient time—typically four months—to post a bond to secure the vessel's release. *Bay Marine Boat Works, Inc. v. M/V GARDINA*, No. 18-CV-01855-HSG, 2018 WL 3536993, at *2 (N.D. Cal. July 23, 2018) (citing *Vineyard Bank v. M/Y Elizabeth I, U.S.C.G. Official No. 1130283*, No. 08cv2044 BTM (WMC), 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009)).

Upon granting a motion for interlocutory sale:

> All sales of property shall be made by the marshal or a deputy marshal, or by other person or organization having the warrant, or by any other person assigned by the court where the marshal or other person or organization having the warrant is a party in interest; and the proceeds of sale shall be forthwith paid into the registry of the court to be disposed of according to law.

Fed. R. Civ. P. Supp. R. E(9)(b).

## III. DISCUSSION

### A. Magistrate Judge Jurisdiction

Section 636(c) typically requires the consent of all parties, including unserved parties. *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017). However, in "in rem forfeiture proceedings, the Ninth Circuit has held that a putative claimant's failure to comply with the applicable filing requirements precludes standing as a party to the action, such that the property owner's consent to magistrate judge jurisdiction is not a prerequisite to the entry of default judgment against his interest in the subject property." *KKMI Sausalito, LLC. V. Vessel "Self Inflicted*", 428 F. Supp. 3d 200, 204 (N.D. Cal. 2019) (citing *United States v. Real Property*, 135 F.3d 1312, 1316-17 (9th Cir. 1998)). Indeed, *Williams* recognized this in rem exception. *Williams*, 875 F.3d at 504. Thus, the Court has the requisite authority to determine this motion for vessel sale without obtaining the consent of the vessel owner.

### B. Merits

Plaintiff argues that all three criteria identified in Supplemental Rule E(9)(a)(i) are met, so the Court will address each criterion below. (*See* Mot. at 8-15.)

#### i. Deterioration

Plaintiff contends that the Vessel is deteriorating as it sits idle. (Mot. at 8.) In support of its argument, Plaintiff submits the declaration of Ray Jones, a licensed yacht broker of 42 years

and President of Long Beach Yacht Sales, Inc. (Decl. of Ray Jones, "Jones Decl.," Dkt. No. 30-1 ¶ 1.) Jones is as "an experienced boater" who has "sold many thousands of vessels over the years." *Id.* He has also "served as an expert in many cases involving vessel condition and valuation matters[.]" *Id.* (citing cases). California federal courts have accepted Jones's opinion in connection with a motion for interlocutory vessel sale, including his opinion that vessels that sit idle inevitably deteriorate in condition and value. *See, e.g., Sausalito Yacht Harbor v. M/V Selene,* No. 24-CV-09322-DMR, 2025 WL 1900323, at *3 (N.D. Cal. June 24, 2025); *Tindini P/L v. Bruce*, No. 18-CV-04639-EDL, 2019 WL 1095824, at *2 (N.D. Cal. Jan. 15, 2019), *report and recommendation adopted*, No. 18-CV-04639-RS, 2019 WL 1095798 (N.D. Cal. Feb. 6, 2019); *S/V SOGGY*, 2019 WL 5091171, at *2; *Pier 32 Marina v. S/V LORENA GRAYCE*, No. 19CV1495-MMA (AGS), 2020 WL 584092, at *1 (S.D. Cal. Feb. 6, 2020); *Bartell Hotels v. S/L Talus*, 445 F. Supp. 3d 983, 988 (S.D. Cal. 2020).

According to Jones, "[i]t is commonly understood among experienced vessel owners, yacht brokers, and others who routinely deal with boats that even well and regularly maintained vessels *inevitably* deteriorate in condition and value over time." (Jones Decl. ¶ 4) (emphasis in original). He opines that "deterioration is *substantially* exacerbated when vessels (as in this case) sit idle for extended periods in a salt water environment" and that the "VESSEL can be expected to further deteriorate in condition and value as she sits idle." *Id.* (emphasis in original). This is because, "[w]hile an arrested vessel sits idle, her engines, generators and other equipment are not operated under load (if at all), and such disuse can detrimentally impact the condition and value of the vessel." *Id.* Thus, "[t]he longer the DEFENDANT VESSEL remains under arrest the greater the extent of the deterioration[.]" *Id.*

Furthermore, Plaintiff contends that the Vessel's "maintenance is of *necessity limited* – the focus simply being on preservation from accident," as required by the Order Appointing Substitute Custodian and Authorizing Movement of Defendant Vessel ("Custodian Order"). (Mot. at 8 (emphasis in original)). Indeed, the Order Appointing the Custodian ordered Plaintiff to "provide, as necessary under the circumstances, [inspection, general custodial, and minor maintenance] services for the safekeeping and preservation of the DEFENDANT VESSEL"). (Custodian Order,

Dkt. No. 13 at ¶ 4(c).) Thus, while Plaintiff has ensured that the Vessel is preserved, no one has conducted the general maintenance on the Vessel required to prevent deterioration since the custodian was appointed.

The court finds that the Jones Declaration, as well as the limited maintenance that is being performed on the Vessel, supports a finding that the Vessel is "liable to deterioration, decay, or injury by being detained in custody pending the action[.]" Fed. R. Civ. P. Supp. R. E(9)(a)(i)(A).

**ii. Excessive or Disproportionate Cost**

Plaintiff also argues that the cost of keeping the Vessel in custody is excessive and disproportionate. (Mot. at 11.) The Custodian Order sets "wharfage services at the marina's standard transient rate of $2.00 per foot of vessel length per day[;]" "custodial services at a rate of fifty cents per foot of vessel length per day[;]" and an inspection of the Vessel's interior at an inspection rate of $50.00 per inspection, to occur at least once a week. (Custodian Order ¶¶ 4(b)-(d).) With a length of 39.5 feet, the Vessel's wharfage services are $79.00 per day and $19.50 per day for custodial services, which totals $98.50 per day. (Mot. at 11.) Calculated through February 18, 2026, Plaintiff's damages had accrued in a sum of not less than $40,566.20. (Compl. ¶ 16.) By the originally noticed hearing date of September 3, 2026, Plaintiff contends that the Vessel would have been under arrest for 127 days, such that the "custodial fees for vessel storage and general custodial service will have accrued in an amount of not less than $12,509.50 (i.e., 127 days X $98.50 = $12,509.50)." (Mot. at 11-12.) Additionally, vessel storage and general custodial fees in the amount of $12,509.50 (127 days x $98.50), plus inspections in the amount of $900 (127 days / 7 days = 18 weeks x $50). *Id.* at 12. The total damages from date of arrest to September 3, 2026 is $13,409.50. *Id.* The reset hearing date of September 10, 2026, 7 days later, results in additional fees for wharfage in the amount of $689.50 and $50 for one inspection, which totals $739.50. *See id.* Thus, as of September 10, 2026, Plaintiff's total damages are $14,149.00.

Based on Jones' review of "several dozen detailed photographs and videos" of the Vessel, which he contends is not operational and in extremely poor condition, he opines that the Vessel is worthless, and has a negative value, because "the cost to bring her into even basic seaworthy condition would far exceed (by many tens of thousands of dollars) her post-repair fair market

value." (Jones Decl. ¶¶ 2-3.) Jones listed 15 factors that he considered in his valuation, including significant long-term deferred maintenance, deck and exterior wood that might not be salvageable, peeling exterior and interior varnish, advanced corrosion on standing and running rigging, substantial marine growth on the hull, and that the owner confirmed that the engine is not operational. (Jones Decl. ¶ 2.)

Given that the Vessel has an estimated negative fair market value, the Court finds that the costs are excessive and disproportionate. Fed. R. Civ. P. Supp. R. E(9)(a)(i)(B); *see S/V SOGGY*, 2019 WL 5091171, at *3 (fees that amount to over 40% of vessel's estimated value were excessive).

**iii. Delay in Securing Release**

Plaintiff argues that an interlocutory sale is also warranted because there has been no attempt to secure the Vessel's release. (Mot. at 9.) A person or entity may seek the release of an arrested vessel by posting adequate security or by entering into a stipulation to release the vessel. Fed. R. Civ. P. Supp. R. E(5)(a)-(c), E(9)(a)(ii). A person claiming an interest in the arrested vessel is also entitled to a hearing on whether the arrest was proper. Fed. R. Civ. P. Supp. R. E(4)(f).

The record shows that no one has posted security, entered into a stipulation regarding the Vessel's release, or requested a hearing. "As a general rule, defendants are given at least four months to bond a vessel absent some other considerations." *Bartell Hotels*, 445 F. Supp. 3d at 988 (quoting *Vineyard Bank*, 2009 WL 799304, at *2); *see S/V SOGGY*, 2019 WL 5091171, at *3 (collecting cases finding that a delay of four to six months is unreasonable).

Here, more than four months have passed since the Vessel's arrest on April 29, 2026. (*See* Dkt. No. 22.) Thus, the Court finds that potential claimants have had a reasonable amount of time to secure the Vessel's release, thereby satisfying this criterion.

**iv. Credit Bid**

Finally, Plaintiff requests authorization to credit bid the lien amount because no other party has asserted any maritime liens against the Vessel, making Plaintiff the senior lienholder. (Mot. at 15-16.) Admiralty & Maritime Local Rule 9-2(b) provides that

United States District Court
Northern District of California

> a plaintiff or intervening plaintiff foreclosing a properly recorded preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served by that party on all other parties no later than 14 days prior to the date of sale.

Here, Plaintiff requests authorization to credit bid the lien amount attested to under oath in the Verified Complaint ($40,566.20), which will be established by affidavit as required by Local Rule 9-2(b), plus its actual and demonstrable costs of suit (including substitute custodian and other *custodia legis* expenses, but excluding attorneys' fees), to be calculated through the date of the Vessel's sale at the rates set forth in the Custodian Order. (Mot. at 16.) As set forth above, Plaintiff has incurred an additional $14,149.00 in custodian fees since the Vessel's arrest. *See* discussion, *supra,* Part III.B.ii.

Accordingly, the Court authorizes Plaintiff to credit bid at the interlocutory sale in the amount of $54,715.20, provided that Plaintiff files and serves an affidavit 14 days prior to the date of sale that establishes the total amount of the secured indebtedness. *See Bartell Hotels*, 445 F. Supp. 3d at 989 (granting request to credit bid where plaintiff was the only maritime claimant).

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff Sausalito Yacht Harbor's motion for interlocutory sale and authorizes Plaintiff to credit bid in the amount of $54,715.20, as well as other actual costs of suit, excluding attorneys' fees.

Additionally, the U.S. Marshal shall sell the Defendant Vessel at public auction as soon as reasonably possible, but no sooner than 30 days from the date of the Marshal's notice of auction. At such auction, Plaintiff may credit bid in the above specified amount, if Plaintiff establishes such indebtedness by filed affidavit at least 14 days before the auction.

Finally, on or before November 13, 2026, Plaintiff shall file a status report indicating whether the sale of the Vessel has taken place or, if not, when Plaintiff expects such sale to occur.

IT IS SO ORDERED.

Dated: September 10, 2026

Kandis Westmore

KANDIS A. WESTMORE
United States Magistrate Judge